UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

| | |
|---|---|
| DEIDRE GAWNE, )<br>        Plaintiff )<br>)<br>)<br>UNUMPROVIDENT )<br>CORPORATION, PAUL )<br>REVERE LIFE INSURANCE )<br>COMPANY, AND )<br>PINE MANOR COLLEGE )<br>LONG TERM DISABILITY )<br>PLAN, )<br>        Defendants )<br>) | 04 10860 WGY<br><br>COMPLAINT<br>MAGISTRATE JUDGE BOWLER |

INTRODUCTION

1. Plaintiff, Deidre Gawne ("Ms. Gawne"), brings this action against Defendants, UnumProvident Corporation ("Unum"), The Paul Revere Life Insurance Company ("Paul Revere") and Pine Manor College Long Term Disability Plan ("Plan") (collectively referred to as "Defendants") for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). Ms. Gawne is a participant in an ERISA welfare benefit plan that is underwritten and insured by Paul Revere and Unum. The name of the welfare benefit plan is the Pine Manor College Long Term Disability Plan. The Plan number is 027538.

2. This Complaint challenges the Defendants' unlawful denial of Ms. Gawne's long term disability ("LTD") income benefits despite the substantial medical evidence

1

demonstrating Ms. Gawne's qualifications for said benefits, thereby depriving Ms. Gawne of the appropriate LTD benefits due him under the Policy.

3. Ms. Gawne is filing this action to recover benefits due under the Plan, to enforce the present rights existing therein, to clarify rights under the terms of the Plan, and to recover costs and attorneys' fees as provided by ERISA.

## JURISDICTION

4. This court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

## PARTIES

5. Ms. Gawne is a 39-year-old individual who currently resides in Framingham, Massachusetts. Ms. Gawne is a vested participant in a Paul Revere employee benefit plan, within the meaning of 29 U.S.C. § 1002(2)(7). Ms. Gawne has standing to bring this action under 29 U.S.C. § 1132(a).

6. The defendant, Unum, is a for-profit corporation with its principal place of business at 2211 Congress Street, Portland, Maine.

7. The defendant, Paul Revere, is a for-profit corporation with its principal place of business at 18 Chestnut Street, Worcester, Massachusetts. Paul Revere underwrites the Plan under which Ms. Gawne is suing. Paul Revere is the party responsible for processing the claims made under the Plan and making a final determination as to Plan participants' eligibility for LTD benefits.

8. At all times relevant to the claims asserted in this Complaint, Paul Revere purported to

act as an ERISA claims fiduciary with respect to participants of the plan, generally, and specifically, with respect to Ms. Gawne, within the meaning of ERISA.

9. The defendant, UnumProvident Corporation, is a for-profit corporation with its principal place of business at 1 Fountain Square, Chattanooga, TN 37402. UnumProvident Corporation conducts business in Massachusetts and is the holding company for Paul Revere, the party responsible for insuring the Plan under which Ms. Gawne is suing.

10. The Plan under which Ms. Gawne is suing is a "long term disability plan" issued by Paul Revere to Pine Manor College, a Massachusetts company with its principal place of business at 703 West Housatonic Street, Pittsfield, Massachusetts. The Plan number is 027538.

## STATEMENT OF FACTS

### Insurance Entitlement, Definitions of Disability, Discretion

11. At the time she became disabled in 1995, Ms. Gawne was working as a librarian at Pine Manor College ("Pine Manor") in Chestnut Hill, Massachusetts.

12. As an employee of Pine Manor, Ms. Gawne was provided with LTD benefits under a contract of insurance between Pine Manor and Paul Revere.

13. Paul Revere both funds and administers the Plan under which Ms. Gawne is suing.

14. Under the terms of the Plan, Paul Revere does not have discretionary authority to determine a participant's eligibility for LTD benefits and to interpret the terms and provisions of the Plan.

15. Under the terms of the Plan, Pine Manor does not have discretionary authority to determine a participant's eligibility for LTD benefits and to interpret the terms and

3

provisions of the Plan.

16. Under the terms of the Plan, UnumProvident does not have discretionary authority to determine a participant's eligibility for LTD benefits and to interpret the terms and provisions of the Plan.

17. Under the terms of the Plan, Ms. Gawne is entitled to receive 60% of her monthly earnings to a maximum benefit of $3,000 a month until she turns 65 years old.

18. Under the terms of the Plan, DISABLED or DISABILITY is defined as follows:

    These unqualified terms may mean either total disability or residual disability.
    This Policy provides benefits for:

    1. total disability from any occupation;
    2. total disability from the employee's own occupation; and
    3. residual disability

19. Totally disabled from any occupation, or total disability from any occupation is defined by the Plan as follows:

    1. because of injury or sickness, the employee is completely prevented from engaging in any occupation for which he is or may become suited by education, training or experience; and

    2. the employee is receiving Doctor's Care. We will waive this requirement if we receive written proof acceptable to us that further Doctor's Care would be of no benefit to the employee.

20. Totally disabled from any occupation, or total disability from employee's own occupation is defined by the Plan as follows:

    1. because of injury or sickness, the employee cannot perform the important duties of his own occupation;

    2. The employee is receiving Doctor's Care. We will waive this requirement if we receive written proof acceptable to us that further Doctor's Care would be of no benefit to the employee; and

       3.      The employee does not work at all.

1. Totally disabled or total disability may mean either totally disabled from any occupation or totally disabled from the employee's own occupation as shown above. If the employee works other than full time at his own job, he may be considered to be residually disabled.

2. The Plan also states that, "An employee shall not be considered disabled solely as a result of the loss, restriction, revocation or non-renewal of any license, permit or certification necessary to perform the duties of any occupation. Rather an employee's disability will be determined relative to his inability to work as a result of total or residual disability as defined in this Policy."

3. "Injury" is defined under the Plan as: "accidental bodily injury sustained while the employee is insured under this Policy."

4. "Sickness" is defined under the Plan as "an illness or disease. It also includes pregnancy."

21. "Doctor's Care" is defined under the Plan as: "the regular and personal care of a Doctor which under prevailing medical standards, is appropriate for the condition causing the disability"

22. "Period of Disability" is defined under the Plan as "a continuous period of time during which an employee is disabled as the result of injury or sickness whether from one or more causes."

23. Except for the terms defined above, the Plan contains no other definition or explanation for the terms "disability."

**Ms. Gawne's Claim For LTD Benefits**

24. Ms. Gawne has presented a timely claim to Paul Revere and Unum, asserting that she is an insured person, that she became disabled while insured, and that she is entitled under the Plan to LTD benefits for the period of time beginning June 1995, when she became totally disabled, and continuing thereafter without interruption through to the present, and continuing in the future until she reaches the age of 65 or is no longer disabled.

**Illness/Basis for Disability**

25. In June 1995, Ms. Gawne was diagnosed with Chronic Fatigue Syndrome ("CFS") and Fibromyalgia by Dr. Alan Brenner, a certified Rheumatologist. Dr. Brenner began seeing Ms. Gawne in 1993, when she presented a three year history of upper extremity weakness and parasthesias.

26. By 1995, Ms. Gawne's symptoms had worsened. On June 2, 1995, Dr. Brenner reported that Ms. Gawne's symptoms as, "exacerbation of severe pain in her arms followed by a syndrome of recurrent episodic dizziness, light headedness and generalized fatigue. She has also had increasing difficulty in terms of memory deficit and is sleeping poorly at night. She is again in danger of losing her job because of reduced ability to carry out her job functions."

27. On June 30, 1995, Dr. Brenner determined that, "due to the severity of Ms. Gawne's fatigue with its attendant loss of ability to concentrate and loss of memory she is truly unable to work in her own or essentially any other occupation for the foreseeable future and I would support her application for disability benefits."

28. Ms. Gawne's condition has persisted to the present. Her current symptoms include: fatigue, hand pain, loss of fine motor control, low blood pressure, joint pain especially in knees and hips, "brain fog," headaches, vision problems, forgetfulness, dizziness, mental distraction, clumsiness, poor balance and coordination, intolerance to light, sensory intolerance, bruised, painful sensation on her hands and underside of forearms and soles of feet, mood swings, mental confusion, and post-exertional malaise.

29. In addition, Ms. Gawne's symptoms are constantly shifting. The uncertainty of Ms. Gawne's condition from day-to-day combined with her fatigue, mental confusion, joint and musculoskeletal pain and post-exertional malaise all contribute significantly to Ms. Gawne's inability to work.

30. Ms. Gawne currently is unable to perform the duties of any occupation as she is disabled as a result of the debilitating effects of CFS and Fibromyalgia.

**Application for Benefits**

31. Realizing that she was totally disabled from performing the material and substantial duties of any occupation as a result of her Chronic Fatigue Syndrome and Fibromyalgia, Ms. Gawne submitted a claim for long-term disability benefits under her Plan on July 18, 1995, with a disability onset date of June 2, 1995.

**Approval for Benefits**

32. On April 25, 1996, Paul Revere approved Ms. Gawne's application for benefits. Paul Revere indicated that it would send Ms. Gawne attending physician forms for completion every two months.

**Change in Plan Definition**

33. On May 7, 1997, David A. Watts of the Provident Companies wrote Ms. Gawne informing her that on December 13, 1997, her Plan definition of total disability was scheduled to change. Specifically, Mr. Watts informed Ms. Gawne that as of December 1997, she would be required to prove total disability from any occupation in order to continue receiving benefits.

34. Paul Revere certified Ms. Gawne's claim for total disability under the any occupation standard contained in the Plan through September 10, 1999.

**Termination of Benefits and Internal Appeal**

35. On September 10, 1999, Ms. Gawne's benefits were terminated on the basis of surveillance taken of Ms. Gawne during the summer of 1999.

36. Following receipt of this termination, Ms. Gawne, through counsel, appealed Paul Revere's denial of Ms. Gawne's benefits on November 29, 1999.

37. Ms. Gawne's LTD benefits were reinstated in February 2000 under a reservation of rights.

38. On July 26, 2001, Ms. Gawne underwent a neuropsychological independent medical examination ("IME") with neuropsychologist Elizabeth Moes Ph.D., ABPP/CN.

39. Dr. Moes concluded that Ms. Gawne was not able to return to work due to emotional and fatigue factors and that any emotional factors were secondary to Ms. Gawne's physical illnesses.

40. Following Dr. Moes' examination results, Paul Revere and Unum lifted the reservation of rights designation from Ms. Gawne's claim.

41. In October 2002, Ms. Gawne underwent a Functional Capacity Evaluation ("FCE"), which was arranged by Paul Revere and Unum. The FCE was conducted by a physical therapist who concluded that Ms. Gawne was capable of returning to light work.

42. Paul Revere erroneously relied on the FCE results to evidence Ms. Gawne's lack of disability. While Ms. Gawne was able to participate in the tasks requested of her, the exertion required for the exam exacerbated her symptoms to the point where she was unable to function the next day.

43. The subsequent effects of the test on Ms. Gawne's physical condition was not taken into account by the physical therapist in findings.

44. The FCE exam was inherently problematic, as it tested one day in Ms. Gawne's life. CFS and Fibromyalgia, Ms. Gawne's disabling conditions, manifest symptoms that vary from day to day. One exam is incapable of capturing the full extent of Ms. Gawne's symptoms and limitations.

45. On December 19, 2002, Paul Revere and Unum terminated Ms. Gawne's benefits on the basis of the results of the FCE. Paul Revere asserted that Ms. Gawne was no longer disabled and therefore no longer entitled to total disability under her Pine Manor LTD Plan.

46. Specifically, Paul Revere and Unum stated in support for their termination of benefits: "The 24-month period of Own Occupation benefits ended December 13, 1997. Since you are not disabled from any occupation according to the terms of your contract and we will be unable to provide benefits past January 13, 2003, and are closing your claim."

47. On March 18, 2003, Ms. Gawne, through counsel, appealed the denial of her LTD

benefits. In this appeal, Ms. Gawne supplied the Defendants with updated documentation in support of her claim for LTD benefits including medical information on CFS and Fibromyalgia, updated medical records, and news articles from field experts.

48. On August 18, 2003, Paul Revere and Unum affirmed its denial of Ms. Gawne LTD benefits.

**Paul Revere's Review of Ms. Gawne's Claim for Benefits**

49. Paul Revere and Unum relied on a July 2001 IME and an October 2002 FCE for the basis of their August 2003 denial of Ms. Gawne's claim.

50. Paul Revere and Unum stated in their August 2003 denial that, "The reviewing physician opined, 'A large portion of the material submitted on appeal is devoted to supporting the assignment of the chronic fatigue syndrome or fibromyalgia labels for this claimant. The use of these labels is not material to the main focus of my review...'"

51. Paul Revere's reviewing physician attested that the majority of the information regarding Ms. Gawne's functional capacity came from her FCE, an exam that was taken almost one year prior to the August 2003 denial and indicative of solely one day in Ms. Gawne's life.

52. Despite the complex nature of Ms. Gawne's condition, at no time during its administrative review did Paul Revere seek a independent verification from a physician of its determination that Ms. Gawne was not disabled.

53. Ms. Gawne remains disabled to this day as a result of the debilitating symptoms of Chronic Fatigue Syndrome and Fibromyalgia.

54. Unum and Paul Revere failed to provide Ms. Gawne with a full and fair review of her claim for benefits

55. Any discretion to which Paul Revere and Unum may claim they are entitled under the Plan is negated by the procedural deficiencies inherent it their review of Ms. Gawne's claim.

56. Unum and Paul Revere have failed to meet their burden of establishing that Ms. Gawne's condition had changed to such a degree that she was no longer totally disabled under the terms of the Plan.

57. The self-serving nature of Unum and Paul Revere's decision that Ms. Gawne is no longer disabled is illuminated by the fact that Ms. Gawne's condition has not changed, but in fact, has only worsened, since Paul Revere first accepted liability on her claim for benefits.

58. Paul Revere and Unum failed to provide Ms. Gawne a full and fair review of her claim for LTD benefits.

59. The decision to deny Ms. Gawne's benefits was wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan and contrary to law.

60. Paul Revere and Unum were influenced by their financial conflict of interest, as both the administrator of the plan and the payor of benefits thereunder, when they terminated Ms. Gawne's benefits.

61. Due to the unlawful denial of benefits under ERISA, Ms. Gawne has lost her rightful long-term disability benefits. She has also suffered emotional distress and humiliation as a result of Paul Revere and Unum's actions.

62. Due to the unlawful denial of benefits under ERISA, Ms. Gawne has also lost the use of her long-term disability benefits.

63. Having exhausted the administrative procedures provided by Paul Revere and Unum, Ms. Gawne now brings this action.

## FIRST CAUSE OF ACTION
### (Enforcement of Terms of Plan
### Action for Unpaid Benefits)
### (ALL DEFENDANTS)

64. Ms. Gawne realleges each of the paragraphs above as if fully set forth herein.

65. The Plan is a contract.

66. Ms. Gawne has performed all of her obligations under the contract.

67. 29 U.S.C. § 1132(a)(1)(B) states that:

A civil action may be brought ---

(1) by a participant or beneficiary –

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to her under the terms of her plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan.

68. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

69. The Defendants unlawfully denied Ms. Gawne's benefits in part by: (1) rejecting, without any basis, the substantial evidence supporting Ms. Gawne's claim for disability ; and (2) denying Ms. Gawne a full and fair review of their decision to deny her benefits.

70. In accordance with 29 U.S.C. §1132, Ms. Gawne is entitled to be paid benefits under the Plan based upon her disabled status from and after January 2003, and continuing into the present.

71. The Defendants have refused to provide Ms. Gawne with these disability benefits and is, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

72. As a direct and proximate result of this breach, Ms. Gawne has lost the principal and the use of her rightful LTD benefits.

### SECOND CAUSE OF ACTION
### (Attorneys' Fees and Costs)
### (ALL DEFENDANTS)

73. Ms. Gawne realleges each of the paragraphs above as if fully set forth herein.

74. Under the standards applicable to ERISA, Ms. Gawne deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

75. The Defendants have the ability to satisfy the award.

76. Ms. Gawne's conduct of this action is in the interests of all participants suffering from physical conditions who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

77. Paul Revere has acted in bad faith in denying Ms. Gawne's benefits under the Plan.

78. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1) Declare, adjudge and decree that Ms. Gawne is entitled to ongoing LTD benefits as calculated under the terms of the Plan.

(2) Award Ms. Gawne the full amount of unpaid benefits under the Plan to which she is entitled, together with such pre-judgment interest as may be allowed by law.

(3) Order that the Defendants make restitution to Ms. Gawne in the amount of any losses sustained by Ms. Gawne in consequence of the wrongful conduct alleged herein, together with prejudgment interest.

(4) Award Ms. Gawne the costs of this action and reasonable attorneys' fees; and

(5) Award such other relief as the court deems just and reasonable.

Respectfully submitted for the Plaintiff,

Date: April 29, 2004                By: _____
                                    Mala M. Rafik
                                    BBO No. 638075
                                    ROSENFELD & RAFIK, P.C.
                                    44 School Street, Suite 410
                                    Boston, MA 02108
                                    617-723-7470